TOBIN R. ETTIG, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ettig v. Commissioner
Docket No. 39292-84.
United States Tax Court
T.C. Memo 1988-182; 1988 Tax Ct. Memo LEXIS 209; 55 T.C.M. (CCH) 720; T.C.M. (RIA) 88182; April 28, 1988. Thomas G. Hodel, for the petitioner. James Gehres, for the respondent. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax as follows: Additions to Tax
Section
Section
Section
Section
Year
Deficiency
6651(a)(1) [1]
6651(a)(2)
6653(a)
6653(a)(2)
1976
$     --
$   178
$   198
$   223
$ --
1978
--
394
438
229
--
1979
3,697
922
--
185
--
1980
773
578
341
129
--
1981
11,699
7,305
2,700 * 1,623 **
*210 After concessions, the issues remaining for decision are: (1) whether the amount of petitioner's 1979 gross income should be increased by the amount of two deposits made to his bank account in the amounts of $ 13,500 and $ 7,000, respectively; (2) whether petitioner's basis in a condominium exceeds that determined by respondent; and (3) whether petitioner is liable for the additions to tax for negligence for the taxable years in issue. GENERAL FINDINGS OF FACT Petitioner resided in Denver, Colorado at the time of filing the petition herein. He was a professional ski instructor and manufacturer's representative at all relevant times. He failed to file timely tax returns for the five years involved; the returns for such years were filed on or about September 28, 1983. For convenience, our remaining findings of fact and opinion will be grouped by issue. Issue 1. Unreported *211 Income -- Bank Deposits
Findings of Fact Respondent reconstructed petitioner's income for the years 1979, 1980 and 1981 by using the bank deposits method. Petitioner concedes various income items for these years which were not reported on his tax returns. The only amounts remaining in dispute are two deposits made in 1979 to his bank account. On February 16, 1979, petitioner deposited $ 13,500 into a bank account he maintained at the United Bank of Littleton (the Bank) and on March 14, 1979, he made an additional deposit of $ 7,000. Respondent claims that the amount of such deposits constitutes unreported income; petitioner claims that such amounts were nontaxable loans from his mother. During 1979, petitioner experienced financial problems; in addition to various other debts, he owed the Bank $ 5,500. In February, 1979, the Bank demanded payment of the debt. Petitioner received financial assistance from his mother [2] in the form of transfers to his account of $ 13,500 on February 16, 1979, and $ 7,000 on March 14, 1979. To evidence these loans, petitioner executed two notes to his mother. One note, in the amount of $ 13,500, was dated February 12, 1979, and was payable *212 in ten years without interest. The other note in the amount of $ 7,000 (which contained similar payment terms) was executed by petitioner on March 9, 1979. [3]
Petitioner did not report the $ 13,500 or $ 7,000 as income on his 1979 return. Subsequent to respondent's audit of his 1979 return and during an appeals conference, documentation of the purported loans was requested. Petitioner's then attorney, Richard Slivka, submitted to Appeals Officer Lazzeri, [4] copies of checks supposedly written by petitioner's mother. Mr. Slivka presented a copy of a check, number 123, dated March 11, 1979, drawn on the Detroit Bank & Trust Company, in the amount of $ 7,000. Appeals Officer Lazzeri noticed that the check had not been encoded by the bank showing that *213 it had been processed for payment. He requested permission to photocopy the check, but Mr. Slivka refused. After the conference, Appeals Officer Lazzeri noticed that the top right-hand corner of the check did not contain the same printed number as on the lower portion of the check. This lower section bore the number 755. A copy of check number 123 was then subpoenaed from Mr. Slivka. It was produced, together with a copy of a similar check; however, this other check bore the number 755 in both the upper right-hand corner and bottom front. Further investigation showed that the amount of the check had also been altered. At trial, petitioner admitted that he had altered the check. OPINION As the trier of facts, we must distill truth from falsehood which is the daily grist of judicial life. See Diaz v. Commissioner,58 T.C. 560, 564 (1972). We carefully observed petitioner while testifying and are satisfied that the two bank deposits in question were in fact loan proceeds from his mother. Thus, we hold that the amount of petitioner's income for 1979 should not be increased by the *214 amount of such deposits. In reaching this conclusion, we found the following persuasive: First, petitioner presented written promissory notes executed on dates coordinate with the transfers of money to his bank account. The notes named petitioner and his mother as the parties, required payment of a stated amount on a date certain, and were executed by petitioner. Respondent questions the authenticity of the notes in light of petitioner's apparent falsification of checks in support of the payments from his mother. We do not condone the falsification of documents; however, we believe these events stand separately. Petitioner's explanation for producing the notes shortly before trial appears plausible in light of the other evidence presented. Second, petitioner testified as to numerous instances in which his mother either lent or gave him money. Petitioner's mother was an employed nurse with a source of income and had substantial savings in the form of bonds, etc. She often provided petitioner with a source of funds. Therefore, we do not find it strange that petitioner's mother lent him money in the amounts in question during a period of financial instability in his life. *215 Finally, a former employee of the Bank testified as to the circumstances of the transfer of the two deposits into petitioner's account. The Bank was demanding payment from petitioner and in response, petitioner had his mother wire transfer money to him. Receipts for the such transfers were introduced. Accordingly, we do not sustain respondent's determination with regard to this issue. Issue 2. Basis in Condominium
Findings of Fact In 1970, petitioner purchased a condominium unit in Aspen, Colorado for $ 50,000. The down payment for this unit came from money borrowed by petitioner from his mother. The unit consisted of 2,500 square feet of living space, with three bedrooms and two baths. [5]
In 1979, petitioner began falling behind on the mortgage payments. At that point, one of petitioner's skiing students, Bob Campbell (Campbell), offered to purchase a one-half interest in the unit for $ 6,000. Campbell also agreed to be responsible for the mortgage payments. Petitioner accepted Campbell's offer. During the time petitioner owned *216 or co-owned the condominium, maintenance and repair work on the unit was consistently being performed. [6] At one point, a water line which ran through the floor in the middle of the unit ruptured, requiring the replacement of drywall, carpet, flooring, and furniture. In addition, petitioner had to install a new roof, new doors and windows, and replace a chandelier which fell from the ceiling. At some point during their co-ownership of the condominium, petitioner and Campbell improved the second floor of the condominium by reducing the width of the upstairs hallway which allowed for an added bedroom and bathroom. In addition, a loft was added for more space and as support for the condominium roof. Bills for the repairs and improvements were paid by Campbell. Petitioner then reimbursed Campbell for a part of the expenses, usually in cash. The bills were paid in this fashion in order to enable Campbell to reduce his tax liabilities, as Campbell was in a higher tax bracket than petitioner. Campbell often hired friends to perform the work, paying *217 them in cash for their services. Petitioner claims that the repairs and improvements totaled $ 50,000-$ 60,000 and that his share of such expenses was $ 22,510. Petitioner did not offer documentation to substantiate his claim. In March, 1981, petitioner sold his remaining one-half interest in the unit to Campbell for $ 209,725. On his 1981 tax return, petitioner claimed a basis in the unit in the amount of $ 52,805, composed of: One-half of original cost
$ 25,000
Petitioner's share of improvements
22,510
Petitioner's share of new roof
4,625
Petitioner's share of attorney fees
670
$ 52,805
Respondent determined petitioner's basis in the unit to be $ 27,486, composed of: One-half of original cost
$ 25,000
Petitioner's share of new roof
1,816
Petitioner's share of attorney fees
670
$ 27,486
Thus, respondent determined that petitioner realized an additional $ 25,319 in gain from the sale of the unit in 1981. OPINION Petitioner bears the burden of proof on this issue. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). We believe that the majority of the items in question constituted incidental repairs *218 to the unit and are, therefore, not capital expenditures which would increase petitioner's basis. See section 263(a); sections 1.263(a)-1(a) and (b), Income Tax Regs. However, the replacement of the roof and the additions to the condominium are capital expenditures and increase petitioner's basis in the unit. Petitioner produced no documentation to substantiate the claimed expenses. Using our best estimation, we find petitioner's adjusted basis in the condominium to be $ 31,486, computed as follows: Original Cost
$ 25,000
Roof Expense
1,816
Room Additions
4,000
Attorneys' Fees
670
Adjusted Basis
$ 31,486
See Cohan v. Commissioner,39 F.2d 50 (2d Cir. 1930). Thus, the additional amount of gain realized by petitioner from the sale of the unit in 1981 is $ 21,319, rather than $ 25,319 as determined by respondent. Issue 3. Additions for Negligence
Findings of Fact Petitioner's tax returns for years 1976, 1978, 1979, 1980 and 1981 were delinquent. Petitioner's excuse for not timely filing these returns is that he was advised, albeit incorrectly, that he did not have to file returns if no tax was due. Petitioner's adjusted *219 gross income, as reported on the returns as filed, was: Year
Amount
1976
$ 31,160
1978
32,340
1979
2,452
1980
12,988
1981
61,173
Respondent determined that petitioner's failure to timely file his tax returns for the five years in issue was due to negligence or intentional disregard of rules and regulations, thus subjecting petitioner to the additions to tax under section 6653(a). OPINION Section 6653(a), prior to its amendment, and section 6653(a)(1), as amended, [7] provide that if any part of any underpayment of tax is due to negligence or intentional disregard of rules and regulations, there shall be added to the tax an amount equal to five percent of the underpayment. Section 6653(a)(2), as added, provides for an addition to tax equal to 50 percent of the amount of the interest payable on the portion of the underpayment due to negligence or intentional disregard of rules and regulations. Petitioner bears the burden of proving that his underpayment was not due to negligence or intentional disregard of rules and regulations. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). *220 Petitioner did not file his tax returns for the years in issue until respondent began an examination of such years. His income during these years was sufficient to put him on notice that the reporting and payment of taxes was, at the minimum, a possibility. While testifying, petitioner took a cavalier attitude about an individual's income tax responsibilities. In response to a question from his own counsel as to why he paid persons in cash, petitioner responded "because they didn't want to report it to the IRS either." Petitioner impressed us as an intelligent person. He knew, or should have known, that he had a responsibility to timely file his tax returns; he chose, however, not to do so. Accordingly, we sustain respondent's determination that petitioner is liable for the additions to tax under sections 6653(a), (a)(1) and (a)(2) for each of the five years in issue. To reflect the foregoing, and the concessions made by the parties, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. * Addition to tax under section 6653(a)(1). ** 50 percent of the interest due on $ 11,699.↩
2. Petitioner's mother was employed for over 30 years as a nurse in Detroit, Michigan prior to her death in 1984; she had accumulated substantial savings. Petitioner testified that on a number of previous occasions his mother gave or lent him money. ↩
3. Petitioner provided respondent with copies of these notes one week prior to trial. He testified that he had only recently found the copies in a storage closet of his home. ↩
4. Mr. Slivka later withdrew as attorney-of-record for petitioner. ↩
5. As purchased, the condominium consisted of two bedrooms and one bathroom upstairs and a bedroom and bathroom downstairs. ↩
6. In response to a question regarding this work, petitioner testified that "They keep repairing and rerepairing and rerepairing." ↩
7. Prior to amendment in 1981, section 6653(a) read as follows: (a) NEGLIGENCE OR INTENTIONAL DISREGARD OF RULES AND REGULATIONS WITH RESPECT TO INCOME OR GIFT TAXES. -- If any part of any underpayment (as defined in subsection (c)(1) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.
Section 6653(a), as applicable to taxes the last date prescribed for payment of which is after December 31, 1981, reads as follows: (a) NEGLIGENCE OF INTENTIONAL DISREGARD OF RULES AND REGULATIONS WITH RESPECT TO INCOME, GIFT, OR WINDFALL PROFIT TAXES. -- (1) IN GENERAL. -- If any part of any underpayment (as defined in subsection (c)(1)) of subtitle B or by chapter 45 (relating to windfall profit tax) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment. (2) ADDITIONAL AMOUNT FOR PORTION ATTRIBUTABLE TO NEGLIGENCE, ETC. -- There shall be added to the tax (in addition to the amount determined under paragraph (1)) an amount equal to 50 percent of the interest payable under section 6601 -- (A) with respect to the portion of the underpayment described in paragraph (1) which is attributable to the negligence of intentional disregard referred to in paragraph (1), and (B) for the period beginning on the last date prescribed by law for payment of such underpayment (determined without regard to any extension) and ending on the date of the assessment of the tax (or, if earlier, the date of the payment of the tax).
Section 6653(a) is applicable to 1976, 1978, 1979 and 1980. Both section 6653(a)(1) and section 6653(a)(2) apply to 1981. ↩